# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ELDRIDGE E. BRAVO, JR.,** *pro se*,
**and GEORGE A. KNUTSSON,** *pro se*,

    **Plaintiffs,**

v.                                                  Case No.  8:07-cv-1246-T-30MAP

**HONIGMAN MILLER SCHWARTZ**
**AND COHN LLP, a foreign limited liability**
**partnership,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction, or Alternatively, Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 8).  Plaintiff has failed to timely respond to either the instant Motion or the Court's Order to Show Cause entered on January 4, 2008.  The Court, having thus considered the Motion without the benefit of a response, and being otherwise fully advised in the premises, determines that it should be denied.

**<u>Background</u>[1]**

From November 1976 through September 1997, Eldridge E. Bravo, Jr., and George A Knutsson (together, "Plaintiffs"), were the sole officers and shareholders of Sundance Carriage Corporation, Inc., d/b/a Dollar Rent-A-Car of Florida ("Sundance").[2] Sundance was a Florida corporation, having its corporate office and principal place of business located in Tampa, Florida.  On or about August 1, 1980, Plaintiffs formed B.K. Properties, Inc.  B.K. Properties owned certain real property in Florida that it leased to Sundance for its business operations.  Plaintiffs claim to have been residents of Pinellas County, Florida, at all times relevant to this action.

In or about June of 1990, Plaintiffs entered into negotiations with Chrysler Credit Corporation ("Chrysler") for the sale of Sundance and the real property owned by B.K. Properties.  Plaintiffs retained James B. Soble with the law firm of Honigman Miller Schwartz and Cohn LLP ("Defendant" or "Honigman Miller") to represent them in the negotiations.[3]  As a part of the negotiations and subsequent transaction, Soble enlisted the assistance of his law partners in Detroit, Michigan.

---

[1] For purposes of its motion, Defendant accepted the allegations in Plaintiffs' Complaint as true.  The Court shall do the same for purposes of this Order.

[2] Bravo was the President of Sundance and owned a 51% interest in the corporation.  Knutsson acted as Secretary/Treasurer, and held the remaining 49% interest.

[3] Based on the Plaintiffs' allegations in paragraphs 4, 8, 10, and 12 of the Complaint, it appears that James Soble was a Florida attorney working in Defendant's Florida office.  In the event Defendant disputes this fact, it may move the Court to reconsider this Order.

On or about August 11, 1990, Chrysler and Sundance entered into a Loan and Option Transaction (the "Loan Agreement") whereby Chrysler agreed to loan $4,000,000.00 to Sundance, plus additional credit and/or financial considerations. Sundance was to use the proceeds to pay off debts, including loans for its rental vehicles and real property. As security for the loan, Sundance, Plaintiffs, and/or B.K. Properties provided Chrysler with the following: (i) a security agreement from Sundance pledging all of its assets to Chrysler, (ii) a mortgage from B.K. Properties on real property located in Hillsborough and Palm Beach Counties, (iii) an assignment of rights from B.K. Properties and Sundance to Chrysler of rights under their lease agreements, and (iv) guaranties from Plaintiffs and B.K. Properties.

In addition, the Loan Agreement provided Chrysler with options to purchase the outstanding stock in Sundance and the real property owned by B.K. Properties. In connection with these options, Chrysler agreed to make a payment of $1,500,000.00 after a sixty day due diligence period. Plaintiffs relinquished their rights to their shares in Sundance to a designated escrow agent, and the business operations of Sundance were relinquished to Chrysler and its agent, Pentastar Services, Inc.

Plaintiffs claim Chrysler never exercised the option to purchase the stock, which expired on October 15, 1990. When Chrysler refused to return the business operations, assets, and shares of Sundance, Plaintiffs again sought legal advice from James Soble. On or about August 29, 1991, two Michigan Honigman Miller attorneys filed an arbitration proceeding in Michigan to enforce the Loan Agreement against Chrysler. On or about June 25, 1992, the parties entered into a settlement agreement (the "Settlement Agreement")

whereby Chrysler paid Plaintiffs the $1.5 million and forgave certain loans in exchange for the Sundance assets and the real property owned by B.K. Properties. The shares of Sundance were returned to Plaintiffs.

Plaintiffs claim that during the time Chrysler controlled Sundance, Chrysler purchased the Dollar Rent-A-Car franchisor company and cancelled its franchise agreement with Sundance. As a result, agreements with all airports for concession rights and space were assigned to the franchisor company (now Chrysler). Plaintiffs claim that their shares became worthless, and that Sundance was reduced to a corporate shell with outstanding liabilities but no business operations or assets.

On or about June 5, 1991, while Chrysler was in control of Sundance, Mildred Rodriguez served the company with a Complaint for personal injuries. Chrysler retained a law firm to represent the company, which ultimately withdrew from the case. On or about January 22, 1993, a jury verdict and final judgment was entered against defenseless Sundance in the amount of $96,178.93.

Plaintiffs claim to have no knowledge of Rodriguez's claim until 1995, when they were served with a Complaint seeking to pierce the corporate veil against them as the sole officers of Sundance. Plaintiffs retained Bob Boos, a Honigman Miller partner, to defend them. As a part of the litigation, Plaintiffs were ordered to produce the Settlement Agreement, which resulted in Chrysler being added as a party to the litigation. On or about March 7, 2005, Chrysler was granted a separate trial. On March 8, 2005, jury trial began against Plaintiffs, which ended in settlement on the morning of March 9, 2005.

On March 7, 2007, Plaintiffs filed a Complaint against Defendant in state court alleging one count of legal malpractice. On July 16, 2007, Defendant removed the action to this court pursuant to 28 U.S.C. §§ 1132, 1441, and 1446, claiming diversity of citizenship and an amount of controversy in excess of $75,000.00. Defendant's instant Motion seeks to dismiss the Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), or alternatively, for the Court to grant summary judgment based on the applicable statute of limitations.

## **Motion to Dismiss Under 12(b)(2)**

The Eleventh Circuit has established a two-step inquiry for determining whether a court has personal jurisdiction over a non-resident defendant. *Sloss Industries Corp. v. Eurisol* 488 F.3d 922, 925 (11th Cir. 2007). First, a court must determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. *Id.; See Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). Second, a court must examine "whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

A court's establishment of personal jurisdiction may be based on a showing of either specific or general jurisdiction. Specific jurisdiction arises "out of a party's activities in the forum state that are related to the cause of action alleged in the complaint." *Id.* at 925

(quoting *McGow,* 412 F.3d, 1207, 1214 n. 3 (11th Cir. 2005)) (internal quotation marks omitted). In order to establish specific jurisdiction, a defendant's contacts with the forum state must (i) be related to the plaintiff's cause of action or have given rise to it, (ii) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and (iii) be such that the defendant should reasonably anticipate being haled into court there. *Id.* (additional citations omitted). In contrast, general jurisdiction can only be exercised if a defendant has "continuous and systematic" contacts with the forum. *Id.* at 925 n. 3*; See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Florida's long-arm statute provides in pertinent part as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.
>
> . . .
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> > 1. The defendant was engaged in solicitation or service activities within this state; or

>    2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
>
>    (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
>
>    . . .
>
>    (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

Defendant argues that Plaintiffs' Complaint fails to allege a causal connection between Defendant's business activities in Florida and Plaintiffs' cause of action. Defendant argues that, as the arbitration proceeding and resulting Settlement Agreement occurred in Michigan and involved Michigan attorneys, Plaintiffs have failed to establish specific jurisdiction pursuant to Fla. Stat. § 48.193(1)(a). Furthermore, Defendant argues that, as it has not held an office in Florida since 1997, it has not been engaged in continuous and systematic business contact with Florida.

The Court does not agree. Plaintiffs initially engaged Honigman Miller in Florida to assist with their negotiations with Chrysler Credit. The loan which was negotiated was for the benefit of Florida residents, Florida corporations, and involved assets and real property located in Florida. Furthermore, Plaintiffs initially sought counsel from Honigman Miller in Florida when Chrysler failed to honor the terms of the Loan Agreement. The fact that Florida Honigman Miller attorneys engaged their Michigan partners to assist with the

arbitration does not divest this court of jurisdiction over Plaintiffs' claims. Furthermore, the fact that Defendant no longer has an office in Florida is not relevant to the instant analysis. Honigman Miller was initially engaged to represent Plaintiffs in Florida for both the negotiation of the Loan Agreement and the arbitration proceeding. Furthermore, Plaintiffs (at least initially) retained Honigman Miller to defend them in the Mildred Rodriguez lawsuit, which was filed in a Florida state court.

By operating a law firm in Florida and representing Plaintiffs and their company in ongoing matters, Defendants purposefully availed themselves of the privilege of conducting business in Florida and established sufficient minimum contacts within the state. Based on its actions, Defendant reasonably should have anticipated being haled into court in Florida. Furthermore, Defendant's alleged malpractice in its representation of Plaintiff gave rise to this lawsuit. No traditional notions of fair play and substantial justice would be offended by this Court's exercise of jurisdiction of Plaintiffs' claims. Accordingly, Defendant's motion to dismiss the Complaint for lack of personal jurisdiction is **DENIED**.

## Motion for Summary Judgment

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

Defendant argues the Court should grant summary judgment against Plaintiffs because the applicable statute of limitations has run on their claim. Defendant first argues that the Michigan statute of limitations should be applied to Plaintiffs' claim. Alternatively, Defendant argues that Plaintiffs' claim would be barred by Florida's statute of limitations.

### I.     Conflict of Laws Issue

A federal court sitting in diversity jurisdictions resolves conflict of laws issues by applying the rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Florida resolves conflicts of laws questions by applying the "most significant relationship" test outlined in Section 145 of the Restatement (Second) of Conflict of Laws. *Id.*; *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Pursuant to Section 145,

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> >    (a) the place where the injury occurred,
> >
> >    (b) the place where the conduct causing the injury occurred,
> >
> >    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> >    (d) the place where the relationship, if any, between the parties is centered.

*Id.* Section 145 advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* The referenced Section 6 of the Restatement lists the following factors to be considered in determining which state has the most significant contact:

> (a) the needs of the interstate and international systems;
>
> (b) the relevant policies of the forum;
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;
>
> (d) the protection of justified expectations;
>
> (e) the basic policies underlying the particular field of law;
>
> (f) certainty, predictability and uniformity of result; and
>
> (g) ease in the determination and application of the law to be applied.

Defendants cite *Trumpet Vine Investments, N.V. v. Union Capital,* 92 F.3d 1110, 1116 (11th Cir. 1996), for the proposition that the place where the conduct causing the injury occurred should be given the greatest amount of weight. However, in *Trumpet Vine*, the parties' relationship was created in New York, an alleged breach of confidentiality occurred in New York, the only formal agreement between the parties was entered into in New York, and the party seeking application of Florida law had no offices or employees within the state.

The instant facts are more similar to those considered by the Third Circuit in *David B. Lilly Company, Inc. v. Fisher*, 18 F.3d 1112 (3d Cir. 1994). The lawsuit in *Lilly* arose out

of a company's acquisition of a controlling interest in the Lilly Company ("Lilly").  *Id.* at 1114.  Prior to the acquisition, Lilly, a Delaware corporation, sought counsel from G. Robert Fisher and his Missouri law firm to structure the transaction such that Lilly would maintain its small business status under a federal set-aside program.  *Id.*  Fisher sought advice from the New York law firm of Cadwalader, Wickersham and Taft ("Cadwalader") on the issue of small business eligibility.  *Id.* at 1115.  A Cadwalder attorney in Washington D.C. researched the issue, but no formal opinion was provided to Fischer.  *Id.*  Lilly alleged that Fisher nevertheless assured them the transaction was structured appropriately.  *Id.*  Five years later, Lilly lost a contract when its small business status was challenged.  As a result, it sued Fisher, his law firm, and Cadwalader for malpractice.  *Id.* at 1116.

At issue was what law should be applied to Lilly's malpractice claims.  In applying the factors set for in Sections 6 and 145 of the Restatement, the Third Circuit noted that the "assessment of the center of the relationship of the parties" was the "cornerstone of [its] analysis."  *Id.* at 1119.  Although the post acquisition corporate structure was established in New York at the close of the transaction, the court considered that Lilly was not injured until its small business deficiency was discovered.  Considering that (i) Delaware had an interest in compensating victims for injuries to its legal consumers resulting from the actions of negligent attorneys, (ii) though the alleged negligence was committed by attorneys whose services originated in other states, as a practical matter the services were rendered in Delaware, and (iii) the surviving Lilly corporation continued operations in Delaware, the court concluded that the parties' relationship was centered in Delaware and applied Delaware

law in considering the plaintiff's claims. *Id.* at 1119-20.

The instant facts are more similar to *Lilly* than *Trumpet Vine*. Here, Plaintiffs were sued by and settled with Rodriguez in Florida. Thus, any economic injury resulting from that settlement occurred within Florida. Though the conduct causing the injury occurred, at least in part, during the arbitration proceeding in Michigan, Defendant's legal services were rendered as a practical matter in Florida. Plaintiffs retained Honigman Miller in Florida to represent Florida residents and companies in negotiating the Loan Agreement, enforcing the terms of the Loan Agreement (ultimately through the arbitration proceeding), and defending the Rodriguez lawsuit. Sundance and B.K. Properties were incorporated and/or formed under Florida law. Plaintiffs and Sundance conducted business in and maintained offices in Florida. Taking these facts into consideration, it cannot be reasonably concluded that the parties relationship was "centered" anywhere but Florida.

Moreover, considering the factors set forth in Section 6 of the Restatement, Florida has a strong interest in compensating victims for injuries to its legal consumers.[4] As the injured Plaintiffs were Florida residents, and Defendant's initial and ongoing representation of Plaintiffs was centered in Florida, the Court concludes that Florida's statute of limitations should be applied to the instant case.

---

[4] *See Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1299 (11th Cir. 1999) (considering that, as mandated by Section 145(1) of the Restatement, in order to specify which sovereign's interest are most significant, a court must turn to the factors delineated in Section 6 rather than simply add up the factors delineated in Section 145(2)).

## II. Florida's Statute of Limitations

Under Florida law, the statute of limitations for a legal malpractice claim is two years. Fla. Stat. § 95.11(4)(1). The period of limitations runs from "the time the cause of action is discovered or should have been discovered with the exercise of due diligence." *Id.* However, a cause of action for legal malpractice does not accrue under Florida law "until the underlying adverse judgment becomes final, including exhaustion of appellate remedies" because that is the first point in time at which there is a redressable harm. *Law Office of David J. Stern, P.A. v. Security National Servicing Corporation,* 969 So. 2d 962, 966 (Fla. 2007). "Until then, a malpractice claim is 'hypothetical' and damages are 'speculative'." *Id.* (additional citations omitted). Moreover, in *Perez-Abreu, Zamora, & De La Fe, P.A. v. Taracido*, 790 So. 2d 1051, 155 (Fla. 2001), the Supreme Court of Florida held that a client's legal malpractice claim resulting from the alleged negligent representation of its attorney in a stock sale transaction accrued when the client settled with a third party in litigation arising from the transaction.

The instant facts are similar to those in *Taracido*. Like the claimants in *Taracido*, Plaintiffs suffered a redressable injury when they settled the Rodriguez lawsuit. It was at that point in time, March 9, 2005, that their cause of action for legal malpractice accrued. Plaintiffs Complaint was filed on March 7, 2007, within the requisite two year period. The Court concludes Plaintiffs claim is not time barred under Florida law. Accordingly, Defendant's motion for summary judgment is **DENIED**.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction, or Alternatively, Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 8) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on February 11, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-1246.mtd or msj.frm